**SQUITIERI & FEARON, LLP**
Olimpio Lee Squitieri (*pro hac vice* forthcoming)
205 Hudson Street, 7th Floor
New York, New York 10013
Telephone: 212-421-6492
lee@sfclasslaw.com

**MOORE LAW, PLLC**
Fletcher Moore (*pro hac vice* forthcoming)
30 Wall Street, 8th Floor
New York, New York 10005
Telephone: (212) 709-8245
fletcher@fmoorelaw.com

**THE DIULIO FIRM PC**
Kristopher P. Diulio (Bar No. 229399)
3200 Park Center Drive, Suite 210
Costa Mesa, California 92626
Telephone: 714-450-6830
KDiulio@DiulioFirm.com

Attorneys for Plaintiff
MARCO SCOTTINI

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO SCOTTINI, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TERRAN ORBITAL CORPORATION, a Delaware Corporation; LOCKHEED MARTIN CORPORATION, a Maryland Corporation; MARC BELL; DANIEL STATON; DOUG RAABERG; GARY HOBART; JAMES LACHANCE; RICHARD Y. NEWTON; STRATTON SCLAVOS; TOBI PETROCELLI; and TOM MANION,<br><br>Defendants. | Case No.: 8:26-cv-01587<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14 AND 20 OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Plaintiff, Marco Scottini ("Plaintiff"), by his undersigned attorneys, on his own behalf and on behalf of all shareholders of record of Terran Orbital Corporation ("Terran" "TOC" or the "Company") on the record date of the vote for the acquisition of Terran by Lockheed Martin Corporation ("LM" or "Lockheed") alleges upon personal knowledge with respect to himself and upon information and belief based upon, inter alia, the investigation of counsel as to all other allegations herein as follows: Plaintiff anticipates that discovery will elicit additional information and evidence in support of the allegations in this complaint.[1]

## I.    NATURE OF THE ACTION

1.    This action is brought by Plaintiff as a shareholder of Terran against Terran and the Marc Bell, Daniel Staton, Doug Raaberg, Gary Hobart, James Lachance, Richard Y. Newton, Stratton Sclavos, Tobi Petrocelli and Tom Manion (collectively the "Terran Directors" "Terran Board" or "Individual Defendants") who issued the materially false and misleading Proxy Statement on October 4, 2024 for soliciting shareholders vote in favor of an Acquisition by defendant Lockheed Martin Corporation (the "Acquisition" or "Merger") named as a "solicitor" of votes in favor of the Acquisition in proxy materials. The Acquisition was a cash out between Terran and Lockheed for $.25 per share even though several months earlier Lockheed had offered $1.00 per share in cash. The claims asserted herein are for violations of

[1] Specifically, Plaintiff believes that substantial additional evidence exists to support the allegations herein, including but not limited to evidence of specific material misrepresentations and omissions in the Proxy as reflected in a fiduciary breach class filed in Delaware captioned "*In Re Terran Orbital Corporation Stockholder Litigation*, CA 2025-0787-NTC ("Public Version") and *Bruce Taylor, On Behalf Of Himself And All Others Similarly Situated v. Marc H. Bell*, C.A. No. 2025-1505-LWW. The non-public versions filed under seal (to prevent disclosure of confidential internal TOC documents obtained through a DGCL§ 220 Demand) demonstrate that there are internal TOC documents which form the basis of the section therein titled "The Proxy Withheld Material Information" (11 paragraphs).  Both complaints have several redacted paragraphs with citations to the 220 records.  In the *Taylor* action, plaintiff states "the Company made rolling document productions continuing through December 19, 2025." Those productions consisted of at least 293 pages of documents.

1

**COMPLAINT**

Section 14(a) and 20(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), 4(a) against all Defendants and alternatively against the Terran directors as identified below and Lockheed for control person liability.

2.     Plaintiff asserts these claims on behalf of the record Terran shareholders as of September 18, 2024 and who held Terran through October 30, 2024, the date the Acquisition with Lockheed closed.

3.     On or about March 1, 2024, Lockheed submitted a bid to acquire space technology and aircraft manufacturer Terran Orbital.  The nonbinding proposal from Lockheed offered to acquire Terran Orbital's outstanding common stock at $1.00 a share in cash, as well as pay $70 million for Terran's outstanding warrants and assume the company's $313 million in outstanding debt ("Lockheed Original Offer"). But after meeting resistance from TOC on the price, Lockheed abruptly withdrew its bid and embarked upon a course of coercion against Terran. Eventually, Terran was forced to agree to an Acquisition at $.25 per share.

4.     The Company filed a Schedule 14A with the U.S. Securities and Exchange Commission (the "SEC") on October 4, 2024, and all supplements thereto (together, the "Proxy").

5.     The Proxy materials contained the Board's recommendation in the Proxy materials to approve the Acquisition but it only came after Terran CEO Marc Bell ("Bell") made an undisclosed decision to change his mind from rejecting the Acquisition to approving the Acquisition coincident with an allocation to defendant Bell of a $6 million personal bonus from the Lockheed bonus pool—two-thirds of the entire transaction bonus pool. Bell had previously publicly condemned the Acquisition as inadequate for TOC shareholders.

6.     The Proxy materials soliciting action from shareholders to approve the Acquisition as described herein failed to make full, accurate and truthful disclosure of all material facts required to make other facts stated in the Proxy materials not misleading. The misrepresented facts include facts of TOC's financial condition; the

2

**COMPLAINT**

status of a major multibillion dollars contract; the negotiation process between Lockheed and TOC; the full facts of a $6 million personal payout to Terran CEO Marc Bell's contingent upon completion of Lockheed's Acquisition of TOC which was done at the 11th hour in order to win Bell support for the Acquisition; the TOC investment advisers hiring, firing and replacement and use and choice of estimates; and Lockheed's use of its power over TOC to coerce the $.25 per share Acquisition.

7.     The misrepresentations and non-disclosures of information rendered the statements in the 2024 Proxy materials materially false and misleading. Other statements in the 2024 Proxy were affirmatively false and misleading and material to shareholders' decision on how to vote and/or whether to seek appraisal.

8.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) and 20(b) of the Exchange Act, based on Defendants' violation of Rule 14a-9 (17 C.F.R. 240.14a-9) and seeks damages and all available equitable relief.

## II.     JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiffs allege violations of Section 14(a) and 20(a) of the Exchange Act.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendant Terran conducts substantial operations in this district in Irvine, California.

## III.    THE PARTIES

### A.     Plaintiff

11.     Marco Scottini was a shareholder of Terran since at least 2022 through the date of the closing of the Acquisition of TOC by Lockheed.

### B.     Defendants

12.     Terran Orbital Corporation (previously defined as "Terran," or the "Company") is a leading manufacturer of satellite products primarily serving the

3

COMPLAINT

aerospace and defense industries. Prior to the Acquisition, Terran was a Delaware corporation headquartered in Boca Raton, Florida, and its stock was traded on the New York Stock Exchange under the ticker symbol "LLAP." After the Acquisition, Terran became a wholly owned subsidiary of Lockheed and moved its headquarters to Irvine, California.

13.    Lockheed Martin Corporation (previously defined as "Lockheed") is a global security and aerospace company, primarily engaged in the research, design, development, manufacture, integration, and sustainment of advance technology systems, products, and services, with a focus on defense and aerospace technologies. Lockheed's common stock is publicly traded on the NYSE under the symbol "LockheedT." It is incorporated and headquartered in  Maryland.

14.    Daniel Staton ("Staton") served as a director of Terran since 2014 and was the Company's Vice Chairman at the time of the Acquisition.

15.    Doug Raaberg ("Raaberg") served as a director of Terran since March 2022, through the date of the Merger. Raaberg also served on the Board of PredaSAR Corporation from 2019 through 2021, when it was a subsidiary of Terran.

16.    Defendant Marc Bell was the Chairman of the board of Terran and CEO of Terran since March 2021 through at least the date of the Acquisition.

17.    James LaChance ("LaChance") served as a director of Terran since 2018 and was a member of the Special Committee of directors formed to, inter alia, evaluate the Lockheed offer to acquire TOC ("Special Committee").

18.    Tom Manion ("Manion") was a director of Terran from March 2022 through the date of the Acquisition and was a member of the Special Committee.

19.    Richard Y. Newton ("Newton") served as a director of Terran since March 2022 through the date of the Acquisition. Newton also served on the Board of PredaSAR Corporation from 2019 through 2021, when it was a subsidiary of Terran.

20.    Stratton Sclavos ("Sclavos") served as a director of Terran since March 2016 through the date of the Acquisition and was a member of the Special Committee.

4

**COMPLAINT**

21.    Tobi Petrocelli ("Petrocelli") served as a director of Terran since March 2022 through the date of the Acquisition.

22.    All of the foregoing Individual Defendants were on the Terran Board when Terran issued the Proxy soliciting shareholder vote to approve the Acquisition. All joined in the unanimous recommendation to shareholders to vote in favor of the Acquisition.

## IV.    SUBSTANTIVE ALLEGATIONS

### A.    Background

23.    Terran went public in March 2022 via a reverse merger with a special purpose Acquisition company at a valuation of approximately $1.8 billion at which time Lockheed owned about 10% of Terran stock after Terran came public.

24.    Lockheed was at all times relevant to this action Terran's dominant commercial customer, largest stockholder, and primary lender with substantial contractual control over Terran. At or about the time of the Acquisition, Lockheed owned approximately 27.7% of the Company's outstanding common stock up from 10% at the time TOC came public in March 2022. At or about the time of the Acquisition, Lockheed generated approximately 70% of the Company's revenues, up from 50% as of March 2022.

25.    Lockheed had effective control over Terran at the time of the Acquisition.

26.    Terran was party to a Strategic Cooperation Agreement (the "SCA") with Lockheed that, among other things, required Terran to prioritize Lockheed's orders over other customers, granted Lockheed rights of first refusal on large satellite manufacturing orders that might prevent TOC from accepting an Lockheed order, and gave Lockheed the right to appoint a director and a Board observer. TOC could not increase the size of its board without Lockheed consent. The SCA ran through 2035.

27.    Additionally, pursuant to an October 2022 convertible note and warrant purchase agreement (the "Purchase Agreement"), Lockheed held $100 million in

5

**COMPLAINT**

convertible notes and had contractual rights to restrict Terran's ability to raise equity capital without Lockheed's consent above specified thresholds.

28. On October 31, 2022, Lockheed and TOC entered into a Convertible Notes Agreement pursuant to which Lockheed purchased a $100 mm note from TOC and received warrants for 17,253,279 shares of TOC common stock. This raised Lockheed's ownership to 34%. The Convertible Notes deal was accompanied by the Strategic Cooperation Agreement ("SCA") between Lockheed and TOC. The Convertible Notes Agreement and SCA had a term of 1 3 years and gave Lockheed aLockheedost complete control of TOC's production capacity capabilities, and ability to accept and fulfill orders from other parties.

B. **Despite Healthy Order Book And Desirable Products TOC Was Often Cash Constrained This Led It To Hire Advisers For A Strategic Review**

29. In February 2023, TOC and Rivada Space Networks ("Rivada") signed a $2.4 billion contract for TOC to design, build and deliver to Rivada 300 low-earth satellites. Upon announcement of the contract, TOC stock jumped from $1.17 to $2.93 per share.

30. The Rivada program was delayed because Rivada could not secure timely financing. The Rivada financing delay caused disruption to TOC's forecasted cash flow. As a result, in Spring 2023, TOC began to explore other financing options. TOC raised $37.1 million in May 2023 through a registered offering which provided cash for operations.

31. The payment delays under a $2.4 billion contract with Rivada challenged Terran's short term liquidity.

32. Despite this liquidity challenge, Bell and the Board were consistently optimistic about the Company's prospects.

33. In summer 2023, company management began to explore more financing options to fund its growth plans. At an August 3, 2023 Board meeting, TOC CFO

6

**COMPLAINT**

raised the possibility that TOC could go into a negative cash position due to delays in collections on existing and expected contracts. The Board authorized the engagement of Jefferies LLC ("Jeffries") to conduct a strategic review process that could include investments, sales of TOC, take private or alternatives.

34.    In August 2023 Bell stated that "80% of [Terran's] $2.6 billion backlog will be converted to revenue by the end of 2025." On August 14, 2023 TOC issued its Q2 earnings release and reported a $2.6 billion backlog, $2.4 billion of which was from Rivada.

35.    In September 2023, formed a Special Committee (the "Special Committee") comprising three independent directors—defendants James LaChance, Stratton Sclavos, and Tom Manion—to evaluate financing options and any potential transaction.  The Special Committee separately engaged Province, LLC ("Province") as an independent financial advisor.

36.    On September 25, 2023 TOC successfully raised $32.5 million through a Confidentially Marketed Public Offering ("CMPO") at a valuation of $1.40 per share.

37.    In fall 2023, a major outside investor valued Terran at $3.00 per share. On October 11, 2023, the Company received a letter from a group of "Concerned Investors" who beneficially owned approximately 8.4% of the Company's shares.[2] Their letter criticized management; detailed a plan for Terran to regain market credibility and restore stockholder value; blamed "leadership missteps" for the Company's share price decline; called for "urgent Board and management changes" to remediate "self-inflicted harm."

38.    Concerned Investors called for the Company to, among other things, separate the role of CEO and Chairman, **replace CEO Marc Bell,** de-stagger and reconstitute the Board by **replacing four Board members,** and retain advisors to conduct an independent strategic review process. The Concerned Investors also

2 The Concerned Investors included sophisticated and knowledgeable investors such as, Sophis Investments LLC, Roark's Drift, LLC, Austin Williams, Roland Coelho, Jordi Puig-Suari, and their affiliates. The three individuals were co-founders of Terran Orbital's primary operating subsidiary, Tyvak Nano-Satellite Systems, Inc.

7

**COMPLAINT**

suggested that Terran's intrinsic value was ***$3.00 per share.*** The Proxy did not disclose the emergence of this shareholder activism, nor the Concerned Investors' position that Terran's intrinsic value was $3.00 per share.

39.     The Terran Board publicly dismissed the Concerned Investors' recommendations in an October 19, 2023 response letter as not offering "any novel or innovative alternatives that the Company has not already considered."[3]

40.     The Board met on November 9, 2023 to address Terran's liquidity among other things. In that meeting, Bell reported that he believed Rivada would provide a material payment in the near term, facilitating a restart of the Company's work for Rivada. Soon thereafter, purportedly because the Company had not received expected further milestone payments from Rivada and did not have a definitive schedule on whether further payments would be received, the "Company" purportedly determined it would remove from its forecasts the expected revenue contribution related to Rivada and would adjust its expected 2023 revenue from $250 million to $130 million. But because Rivada was under contractual obligation and remained committed to buying Terran satellites the company kept the orders in "backlog."

41.     On November 9, 2023, the Concerned Investors ***issued another letter*** categorizing the Company's reduction of its revenue guidance as a huge miss that it was treating nonchalantly and criticizing the Board for **"*entrench[ing] itself*,** rather than simply meet[ing] with us and respond[ing] to our good faith overtures." Nevertheless, the Concerned Investors further opined that, "[ d]espite the prospect of lowered near-term financial guidance, we remain confident that Terran's shares are materially undervalued at current prices [$0.82 per share as of November 8, 2023] ... and continue to believe that present intrinsic value resides around $3/share."

42.     On November 14, 2023, Terran announced ***"Record*** Third Quarter 2023

[3] The Proxy did not disclose ***any*** such alternatives considered by the Board at that time nor any substantive reason for rejecting any of the alternatives suggested by Concerned Investors or even whether any alternatives were considered internally.

8

**COMPLAINT**

Financial Results." The following day, Terran's management conducted a conference call to discuss Q3 2023 results. On the call, Bell stated that **"our current expectation [is] that we will have sufficient cash to cover capital investments and operations until becoming cash flow positive, which is expected in 2024."** Bell was later asked by a private investor whether Terran had "enough cash to make it through to cash flow positive" even if Rivada never sent any additional payments. Bell responded, **"Yes, we do."** In response to another question concerning Terran's cash flow, Bell reiterated that **"the plan is to be cash flow positive during 2024."**

43.    Notwithstanding "record" financial results and bright prospects, Terran's need for cash continued and it asked Jefferies to explore what alternatives were available to Terran. On October 24, 2023, Jefferies began to contact parties, including Lockheed, to gauge interest in a strategic transaction with TOC. The company provided NDA's to interested parties on November 16, 2023, among them, Lockheed.

44.    By January 2, 2024, TOC publicly announced that it had received a payment from Rivada for "the completion of a program milestone" which brought Rivada current. TOC also announced that it expected to receive additional milestone payments in 2024 and that TOC could meet its delivery obligations in 2025 and 2026 to Rivada.

45.    In a separate release on January 2, 2024, Bell stated:

> We are entering 2024 with a strong financial foundation that we believe will enable us to continue to execute on our strategic and operational objectives.

Bell publicly reiterated his optimistic assent of TOC in a February 7, 2024 interview wherein he stated: "we don't need cash;" "we're doing just fine;" "we have no intention of raising any money."

46.    On February 9, 2024, the Board was told by Jefferies that the most interested potential bidder was Lockheed, with Jefferies stating that Terran was a "high priority for Lockheed." Concurrently Terran and Lockheed were both competing for a

9

**COMPLAINT**

coveted satellite contract which Terran eventually was awarded much to Lockheed's disadvantage.

47.   On March 1, 2024 Lockheed bid $1.00 for TOC, below its then market price of $1.08.

48.   Bell and the Board rejected the Initial Offer as inadequate, adopted a shareholder rights plan ("Poison Pill"), and engaged in further negotiations with Lockheed.  Bell characterized Lockheed's tactics as "hostile" and "bullying" and, as late as Spring 2024, firmly believed that a $1.00 per share offer undervalued the Company.  Analyst price targets at the time ranged from $1.00 to $12.00 per share.

49.   The Board and Jefferies agreed that Lockheed offer was low and that given Lockheed's public disclosure of the offer,[4] TOC should adopt a shareholder right plan ("poison pill") to protect against low ball offers. The poison pill was adopted.

50.   On April 1, 2024, Terran issued a press release announcing FY23 earnings, which quoted Bell as stating: "I am pleased to report our company's strong results for 2023. Our revenue growth and gross margin improvement affirm the strength of our strategy and execution." The Company announced **"*Record* 2023 Financial Results,"** including (i) record revenue of$135.9 million up 44% year-over- year, (the $135.9 of revenue exceeded the revised 2023 forecasted revenue announced by Terran in November 2023), (ii) record gross profit of $8.6 million improved $25.8 million over prior year, (iii) manufacturing 78 satellites for Lockheed Martin for the SDA programs, and (iv) signing more than $2.7 billion in new awards in 2023 representing more than 360 satellites. Terran continued to include the Rivada contract in its backlog.

51.   On April 16, 2024, French and other Lockheed representatives attended a meeting at the Company's offices in Irvine, California, at which Lockheed discussed its assessment of the Company's business and plans. During this meeting, management of the Company also presented updated information regarding the Company's financial

---

[4] Public disclosures of initial Acquisitions offers in situations such as this are usually to impose a cap on the public market price of the targeted company's stock.

**COMPLAINT**

forecast, discussed program gross margins and presented its views on pipeline opportunities. During this meeting, defendant LaChance suggested to Lockheed management the concept of an earn-out or contingent valuation right, again indicating that *the Board was aware that Lockheed's bid undervalued Terran.*

52. On April 24, 2024, the Special Committee hired Province LLC to do a valuation analysis and advise the Special Committee on Lockheed's $1.00 offer.

53. On April 30, 2024, before the Company could deliver a formal counterproposal, Lockheed withdrew its Initial Offer. Lockheed knew of Terran liquidity issues.

**C.    Lockheed's Coercive Conduct and the Company's Capital-Raising Efforts**

54. On April 30, 2024, Lockheed withdrew its offer.

55. Following Lockheed's withdrawal of the Initial Offer, the Board and management continued to pursue financing alternatives.  Throughout the summer of 2024, the Company negotiated an at-the-market offering program (the "ATM Agreement") with H.C. Wainwright as sales agent to issue and sell up to $98 million in shares.  However, the ATM Agreement was hamstrung by the October 2022 Purchase Agreement's requirement that the Company obtain Lockheed's consent before selling more than approximately 26.4 million shares—limiting Terran's ability to raise more than approximately $21 million at then prevailing market prices.

56. On May 7, 2024, the Special Committee received the Province financial valuation model.[5]

57. In a May 21, 2024 earnings call for TOC Q-1 2024 results, Bell remained bullish about the Rivada contract and TOC liquidity.

58. Advised by King & Spaulding, Jefferies and Province, on June 18, 2024, Defendant LaChance spoke to Lockheed to convey a counter proposal to Lockheed's $1.00 per share, now withdrawn, offer. LaChance proposed a deal at $1.50 per share

---

[5] The Proxy failed to disclose the model or any analysis or valuation by Province.

11

**COMPLAINT**

with a $1.00 CVR, as well as, a request for advance payment on a project Terran was working on for Lockheed.

59.    On July 23, 2024, Lockheed signed a sale agreement with an ATM facility with up to $98 million in shares but Lockheed refused to consent.

60.    Lockheed declined the request for an advance and began to use (misuse) its power over TOC to exert financial pressure by blocking all efforts by TOC to secure additional funding.

61.    Terran also attempted to enter into a warrant inducement transaction that would have raised approximately $25 million.  Lockheed again refused to provide the consent required under the Purchase Agreement.  Lockheed knew that such action on its part would materially adversely affect Terran.  Lockheed was privy to all inside information because it was present at Board meetings.

62.    The Board was well aware that Lockheed was using its contractual leverage to coerce an Acquisition at a distressed price.

63.    By July 29, 2024, Bell had privately informed the Board that Terran had been awarded the Space Development Agency's "Gamma Contract" for approximately $254 million—a contract Lockheed had also competed for.

**D.    Bell's Abrupt Reversal and the $6 Million Transaction Bonus**

64.    Despite the Company's improving contract position and Bell's consistent publicly expressed optimism, events took a dramatic turn on August 8, 2024.  In the morning Board meeting that day, Bell presented updates on the Gamma Contract, and the Board authorized Bell to sell shares under the ATM facility at a <u>floor</u> price of $0.70 per share.

65.    Later that same afternoon, Bell met privately with Lockheed's representative, Mark French.  At a second Board meeting held on the evening of August 8, Bell abruptly reversed his position and expressed support for Lockheed's proposed Acquisition at $0.25 per share—less than one-third of the $0.70 per share floor the Board had approved just hours earlier and one-quarter of the Initial Offer Bell had

**COMPLAINT**

previously rejected as "too low."

66.    On the same day Bell expressed this reversal, the Board also voted to dissolve the Special Committee that had been charged with independently overseeing the sale process.  Stripped of independent oversight, Bell was then authorized to engage a new financial advisor, Lincoln International ("Lincoln"), who was given only five days to produce a fairness opinion and was supplied with management projections that were materially more pessimistic than projections contemporaneously provided to Jefferies.[6]

67.    On August 12, 2024, TOC filed its 10Q which omitted the Rivada backlog thus dropping the reported backlog from $2.7 billion to $312.7 million. TOC stock price dropped 29%.

68.    On September 6, 2024, the Board approved a transaction bonus pool of $9 million (the "Bonus Pool"), of which $6 million—fully two-thirds—was awarded to Bell personally.  The Bonus Pool was expressly conditioned on the consummation of the Acquisition with Lockheed.  The Proxy, however, offered no explanation of when discussions concerning Bell's bonus began, whether the bonus was negotiated on or around August 8, or whether Bell's private meeting with Lockheed's French that afternoon was connected to his dramatic reversal in position.  Including the $6 million Acquisition bonus, Bell effectively received more than double the $0.25 per share Acquisition consideration on his own equity position as compared to the consideration received by Terran's public minority stockholders.

E.    **The Defective Proxy and Stockholder Vote**

69.    The Proxy solicited shareholders to consider and vote on:

- a proposal to approve (a) the adoption of the Agreement and Plan of Merger, dated as of August 15, 2024, by

---

[6] The Proxy provides scant background on these decisions nor <u>any</u> discussion of the Board's or Special Committee's rationale on reasons for these actions.  As stated in the *Taylor* case supra, the 220 document produced therein also provided no insight why the Board felt that the Special Committee's detached and disinterested judgment was no longer needed to guide the sale process.

13

**COMPLAINT**

and among Terran Orbital Corporation, a Delaware corporation, which we refer to as "we," "us," "our," "Terran" or the "Company," Lockheed Martin Corporation, a Maryland corporation, which we refer to as "Lockheed Martin" or "Parent," and Tholian Merger Sub, Inc., a Delaware corporation and wholly owned subsidiary of Lockheed Martin, which we refer to as "Merger Sub," as it may be amended from time to time, which we refer to as the "merger agreement," a copy of which is attached as Annex A to the accompanying proxy statement and is incorporated in its entirety into this notice and made a part hereof, and includes (i) as Exhibit A thereto the form of certificate of incorporation of the surviving corporation of the merger (as defined below), and (ii) as Exhibit B thereto the form of bylaws of the surviving corporation of the merger and (b) the merger (which we refer to, collectively, as the "merger agreement proposal");

- a proposal to approve, on a nonbinding advisory basis. compensation that will or may become payable to our named executive officers in connection with the merger (which we refer to as the "nonbinding merger-related compensation proposal); and

- a proposal to approve one or more adjournments of the special meeting, if necessary or appropriate, to solicit additional proxies if there are insufficient votes at the time of the special meeting to approve the merger agreement proposal (which we refer to as the "adjournment proposal").

70.    Defendants issued "Additional definitive proxy soliciting materials and Rule 14(a)(12) materials on October 21, 2024, October 15, 2024, after the October 4, 2024 filing of the Schedule 14A Proxy Statement.

71.    Defendants allowed shareholders the bare minimum of time to understand the Acquisition by sending the Proxy on October 4 and setting the meeting to cast votes as October 29, 2024. The record date for voting was set as September 16, 2024.

72.    Under Delaware General Corporate Law ("DGCL") shareholders had the right to demand appraisal and seek appraisal of the fair value of their shares as may be determined by the Delaware Court of Chancery pursuant to DGCL 262.

14

**COMPLAINT**

73.    The Proxy in "Parties to the Merger" section described Lockheed Martin Corporation in its own public relation terms:

> Lockheed Martin is a global defense technology company driving innovation and advancing scientific discovery. Lockheed Martin's all-domain mission solutions and 21st Century Security vision accelerate the delivery of transformative technologies to ensure that it serves always strong ahead of ready.

74.    While Lockheed's 27.7% ownership percentage was disclosed nothing else was disclose about Lockheed's power and control over TOC. Compounding the omission of material information about Lockheed in the Proxy was Defendants bare disclosure of "Ordinary Course Transaction With Lockheed Martin" and "Interest Payments To Lockheed Martin."

75.    Stockholder has reviewed the Proxy and identified the following material omissions and misstatements, among others:

a.    The Proxy omits any reference to multiple significant Board meetings held in 2023, including meetings on August 18, August 28, September 8, and September 18, 2023, at which the Board discussed Lockheed's tactics of starving the Company of capital to coerce an Acquisition at a distressed price;

b.    The Proxy fails to disclose that two separate Board meetings were held on August 8, 2024, and that the Board's plan of action changed abruptly between the two meetings—specifically, that the Board initially authorized Bell to sell shares at a floor of $0.70 per share before Bell's afternoon meeting with Lockheed's French, after which the Board endorsed a $0.25 per share Acquisition price;

c.    The Proxy fails to disclose Province's valuation model or any analyses it performed;

d.    The Proxy fails to adequately disclose the material differences in financial projections supplied to Province, Jefferies, and Lincoln respectively, or to explain why the projections supplied to Lincoln for the August 14, 2024 fairness opinion were materially more pessimistic than those provided to Jefferies for its

15

**COMPLAINT**

presentation just two days earlier on August 12, 2024, or why both sets of August 2024 projections were drastically lower than the March 2024 projections provided to Jefferies when the Board sought to fend off the Initial Offer;

e.      The Proxy omits the March 2024 management projections that Jefferies relied upon in forming its initial valuation of the Company;

f.      The Proxy fails to disclose when discussions regarding Bell's $6 million transaction bonus began, whether those discussions occurred in connection with Bell's August 8 private meeting with Lockheed's French, and whether Bell's bonus was expressly conditioned on the Merger at the time of his August 8 reversal;

g.      The Proxy fails to disclose anything discussed or resolved or presented at the August 18, 2023 board meeting or the August 28, 2023 or the September 8, 2023 meeting or the September 18, 2023 meeting of the Special Committee or the September 8, 2024 Board meeting;

h.      The Proxy omits any meaningful discussion of Lockheed's pattern of using its contractual veto rights under the Purchase Agreement to prevent the Company from raising capital, which the Board had openly recognized as a strategy to push Terran toward insolvency;

i.      The Proxy failed to disclose the Sophis November 9, 2023 letter;

j.      The Proxy makes only cursory mention of the Gamma Contract— which the Board had known about since July 29, 2024;

k.      The two financial advisors retained by TOC for a fairness opinion used materially different "baseline" estimates of financial projections;

l.      The Proxy fails to disclose that Province, the Special Committee's chosen independent financial advisor, did not provide a fairness opinion, and that Province's independent valuation work was impeded by management's refusal to provide updated Board-approved financial projections; and

m.      The Proxy fails to disclose why the Special Committee was dissolved on August 8, 2024.

16

**COMPLAINT**

76. The defendant directors stated in the Proxy that they had "unanimously approved, adopted and declared advisable the merger agreement and recommended that the Company's stockholders vote in favor of the merger agreement proposal."

77. "The Board unanimously recommends that you vote (i) "FOR" approval of the merger agreement proposal; (ii) "FOR" approval of the non-binding merger related compensation proposal and (iii) "FOR" approval of the adjournment proposal."

78. In the Proxy, the Board indicated that among its "Reasons For The Merger" several "reasons" which were rendered materially false and misleading by omissions as detailed below:

79. The Proxy described a "reason" for the Acquisition was that TOC has already taken advances from Lockheed on "programs' which represented 91% of TOC's backlog as of June 30, 2024. However, the Proxy failed to disclose that Lockheed's backlog as a percentage of TOC backlog was dramatically increased when TOC's Board approved the removal from the backlog number the 2.7 billion Rivada backlog. The Proxy however admitted that removal of the backlog potentially negatively impacted "financial stability," "capital raising" and customer engagement." The Proxy, without explanation cited "several uncertainties regarding Rivada's ability to continue funding contract performance" but did not describe any such uncertainties.

80. The Proxy also stated that another "reason" for the Board's recommendation of the Acquisition has "the trajectory of the trading price of the Company common stock, which in the three days prior to entering the Merger Agreement declined by more than 38% from $.65 per share on August 12, 2024 to $.40 per share on August 14, 2024," without disclosing that TOC's stock price fell dramatically on the announcement of TOC's removal of 2.7 billion of Rivada backlog.

81. The Proxy also stated that the directors "determined' that the merger . . . was "in the best interests of the Company and its shareholders."

17

**COMPLAINT**

82.     The Proxy fails to explain what Lincoln means by the "the Consideration to be received by the stockholders in connection with the transaction is fair form a financial point of view, to the shareholders' and is misleading because the Proxy also informs stockholders that upon appraisal shareholders and only get "fair value."

83.     The Proxy materials filed with the SEC and issued to stockholders to solicit their vote in favor, expressly stated that Lockheed "may be deemed to be participants in the solicitation of proxies from Terran Orbital stockholders with respect to the proposed transaction."

84.     Only approximately 55% of shareholders voted in favor of the Acquisition, including executive officers and Lockheed collective 42%. Thus at least 45% of TOC shareholders were eligible to file for appraisal which was considered as not voting the Merger.

85.     On October 29, 2024, the Company's stockholders voted in favor of the Merger.  The Merger closed on October 30, 2024.  Notably, the Merger was not conditioned on approval by a majority of disinterested minority stockholders, nor was it approved by a properly constituted and functioning independent special committee.

### FIRST CAUSE OF ACTION

**(Against Terran For Violations Of Section 14(a) Of The Exchange Act And Rule 14(a)-9 Promulgated Thereunder For False And Misleading Statements In Proxy Materials)**

86.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

87.     Plaintiff brings this count on behalf of himself as a shareholder eligible to vote on the proposed  Acquisition.

88.     Plaintiff asserts solely negligence claims in this count.

89.     The Proxy successfully solicited shareholders to approve the Merger.

90.     Section 14(a)of the Exchange Act makes it "unlawful for any person, by the use of the mails  or by any means  or instrumentality of interstate commerce or of

18

**COMPLAINT**

any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 781 of this title." 15 U.S.C. § 78n(a)(1).

91.     SEC Rule 14a-9 prohibits the solicitation of shareholder votes in proxy communications that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading  with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240. 14a-9.

92.     SEC Rule 14a-9(b), 17 C.F.R. § 240.14(a) states: "the fact that a proxy statement has been filed with or examined by the Commission shall not be deemed a finding by the Commission that such material is accurate or complete."

93.     Terran issued the Proxy Materials and/or the individual defendants permitted the use of their names in the Proxy with the intention of soliciting shareholder support for the Acquisition or resolutions.

94.     Without understanding the true nature of Lockheed's power and control over TOC and without knowing the pressures exerted by Lockheed during the Merger process, shareholders were deprived of material information critical to the cast of their vote *and* their decision to seek appraisal.

95.     Without disclosure of material information about Lockheed's power and control over TOC and without disclosure of material information about Lockheed's pressure on TOC during Acquisition negotiations, the Proxy was materially false and misleading.

96.     The Individual Defendants should have known that the Proxy was materially false and misleading in regard to the above-referenced material information.

**COMPLAINT**

97.     As directors and/or officers, the Individual Defendants had a duty to carefully review the Proxy—particularly those sections purporting to describe their own actions, relationships and beliefs—and to ensure that the Proxy did not omit material facts and contain materially misleading statements.

98.     The Proxy Statements were defective and in violation of SEC Rule 14 and Rule 14a-9 because they contained untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading as more fully set forth herein.

99.     The misrepresentations and omissions in the Proxy Materials were material to Plaintiff, who was solicited to vote in favor of the proposals.

100.    The defects in the proxy statement would have been considered important by a reasonable shareholder who was in the process of deciding how to vote on each of the proposals at issue herein and would have been viewed by a reasonable investor as having significantly altered the total mix of information made available.

101.    The omitted and misrepresented information cast material doubt upon defendants' statements about control systems and compensation and practices that a reasonable shareholder would have considered those important in deciding how to vote.

102.    A majority of votes of outstanding stock was required to approve the Acquisition.

103.    The value of Plaintiff's stock and Plaintiff's corporate franchise rights were injured and damaged by Defendants' actions.

104.    As a direct and proximate result of issuing the defective Proxy Materials, negligent acts and omissions detailed herein, Plaintiff has suffered damages in connection with the approval of the proposals made in the Proxy.

20

**COMPLAINT**

**SECOND CAUSE OF ACTION**

**(Against Lockheed For Violations Of Section 20(a) Of The Exchange Act)**

105.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

106.   Terran went public in March 2022 via a reverse merger with a special purpose Acquisition company, Tailwind Two Acquisition Corp. (the "De-SPAC"), which transaction valued the Company at $1.8 billion. In connection with the De-SPAC, Lockheed participated in a $50 million private investment, along with AE Industrial Partners, Beach Point Capital, Daniel Staton, and Fuel Venture Capital. The Company also had access to up to $125 million in debt commitments from Lockheed and Franscico Partners.

107.   Since the De-SPAC, the Company has primarily served the interests of its largest and controlling stockholder, Lockheed.   Lockheed is a long-time and significant investor in Terran and made an initial investment in the Company in 2017, as well as an additional investment in 2020. The Proxy also acknowledges that Lockheed has been the Company's primary commercial customer since October 2022.[7] As of the date of the Proxy, Lockheed owned approximately 27.7% of the Company's common stock, generated approximately 70% of the Company's revenues, and was responsible for 81% of Terran's backlog of forthcoming and expected revenue.

108.   Lockheed also exerts substantial control over the Company's ability to manufacture satellites through various contracts between Terran and Lockheed. Specifically, on October 31, 2022, the Company entered into a Strategic Cooperation Agreement (the "SCA") with Lockheed, whereby the parties agreed to: "(i) collaborate on the development, production, and sale of satellites for use in U.S. Government spacecraft and spacecraft procurement and (ii) establish a cooperation framework to enable the parties to enter into projects, research and development

---

[7] Proxy at 33.

21

**COMPLAINT**

agreements, and other collaborative business arrangements and 'teaming activities.'"[8] The SCA contains numerous provisions that require the Company to prioritize its relationship with Lockheed over other customers. For instance, if the Company is "awarded a contract to build satellites for Lockheed Martin, then [the Company is] required to prioritize the Lockheed Martin order over manufacturing satellites for [the Company's] other customers," and Lockheed has "the right of first refusal over certain large satellite manufacturing orders received from third parties and receives preferential rights to bid on certain services and products or to require [the Company] to use them as a supplier."[9] The Company's 2024 annual report warns that the Company "may be required to prioritize Lockheed Martin over other customers which could adversely affect our operating performance and result in a loss of expected revenue."[10]

109.   Lockheed further exerted significant influence over the Company through its large debt holdings. Lockheed and Terran were parties to an October 31, 2022 convertible note and warrant purchase agreement (the "Purchase Agreement"), which (i) provided for the sale of $100 million in convertible notes to Lockheed and (ii) warranted that Lockheed would purchase 17,253,279 shares of the Company's common stock.[11] Pursuant to the Purchase Agreement, Lockheed was able to limit the Company's ability to obtain necessary debt financing and raise capital.[12] In connection with the Purchase Agreement, the Company also negotiated a standstill provision, expiring on October 21, 2023, which prohibited Lockheed from acquiring any further equity in the Company or making any public merger proposal with the

---

[8] Terran Form 10-K (April 1, 2024) at 3; *see also* Terran003381.

[9] Terran, Form 10-K (April 1, 2024) at 14-15.

[10] *Id*. at 11.

[11] Terran, Form 8-K (Oct. 31, 2022); *see also id*. at Ex. 10.1.

[12] Terran, Form 10-K (April 1, 2024) at 26.

22

**COMPLAINT**

Company (the "Standstill Provision").[13] Upon completion of the Purchase Agreement, Lockheed owned 34% of the Company's outstanding common stock.[14]

110.   Lockheed also generates the vast majority of the Company's revenue. During 2022 and 2023, Lockheed's business represented approximately 76% and 81% of the Company's consolidated revenue, respectively.[15] As a result, in public filings, the Company highlighted its reliance on Lockheed as one of its major risk factors, stating that "[a]ny reduction or delay in sales of products to Lockheed Martin could significantly reduce our revenue."[16]

111.   Lockheed is a person of Terran within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of its positions and due to its participation in and/or control of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Materials filed with the SEC, had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the Proxy materials that Plaintiff contends are materially incomplete and misleading.

112.   Lockheed was provided with or had unlimited access to copies of the Proxy materials and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

113.   In particular, Lockheed had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the

---

[13] Terran, Form 8-K (Oct. 31, 2022).

[14] Terran, Schedule 13D (Oct. 31, 2022).

[15] *Id.* at 4.

[16] *Id.* at 14.

23

**COMPLAINT**

power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same.

114.   By virtue of the foregoing, Lockheed has violated Section 20(a).

115.   As a direct and proximate result of issuing the defective Proxy Materials, Plaintiff and other members of the Class have suffered damages in connection with the proposals being made in the Proxy relating to approving the Acquisition.

## THIRD CAUSE OF ACTION

**(Against the Terran Board and Controller Lockheed Martin for**

**Aiding and Abetting For Violations Of Section 14(a) Of The Exchange Act,**

**Rule 14(a)-9 and 20(a) Of The Exchange Act)**

116.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

117.   On August 8, 2024, Bell met privately with Lockheed's representative, Mark French.

118.   At a second Board meeting held on the evening of August 8, Bell abruptly reversed his position, without a comprehensive or plausible  explanation, and expressed support for Lockheed's proposed Acquisition at $0.25 per share—less than one-third of the $0.70 per share floor the Board had approved just hours earlier and one-quarter of the Initial Offer Bell had previously rejected as "too low."

119.   On the same day Bell expressed this reversal, the Terran Board also voted to dissolve the Special Committee that had been charged with independently overseeing the sale process.  Stripped of independent oversight, Bell was then authorized to engage a new financial advisor, Lincoln International ("Lincoln"), who was given only five days to produce a fairness opinion and was supplied with management projections that were materially more pessimistic than projections contemporaneously provided to Jefferies.

120.   On September 6, 2024, the Terran Board approved a transaction Bonus Pool of $9 million, of which $6 million—fully two-thirds—was awarded to Bell

24

<strong>COMPLAINT</strong>

personally. The Bonus Pool was expressly conditioned on the consummation of the Merger with Lockheed.

121. The Proxy, however, offered no explanation of when discussions concerning Bell's bonus began, whether the bonus was negotiated on or around August 8, or whether Bell's private meeting with Lockheed's French that afternoon was connected to his dramatic reversal in position. Including the $6 million Merger bonus, Bell effectively received more than double the $0.25 per share Merger Consideration on his own equity position as compared to the consideration received by Terran's public minority stockholders.

122. By offering, encouraging and accomplishing the illegal and improper transactions alleged herein and concealing them from the public, the Terran Board and Lockheed Martin has encouraged, facilitated, and advanced violations of Section 14(a) Of The Exchange Act, Rule 14(a)-9 and 20(a) Of The Exchange Act. In so doing, these Defendants have each aided and abetted, conspired, and schemed with one another to engage in the illegal conduct complained herein.

123. Plaintiff on behalf of the class has no adequate remedy at law.

25

**COMPLAINT**

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff pray for relief as follows:

A.    Certifying this action and these claims under Rule 23(b)(3) of the Fed. R. Civ. P. and naming Plaintiff as class representative and his counsel as class counsel.

B.    Awarding Plaintiff the amount of damages sustained as a result of Terran's materially false and misleading proxy;

C.    Rescinding and clawing back all compensation awards or payments to Bell, officers or directors made thereunder or in the Acquisition;

D.    Awarding to Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees and expenses;

E.    Granting such other and further relief as the Court deems just and proper.


Dated: June 18, 2026                    **THE DIULIO FIRM PC**


                                        /s/ Kristopher P. Diulio _____
                                        Kristopher P. Diulio

                                        Attorneys for Plaintiff
                                        MARCO SCOTTINI


## PLAINTIFF'S DEMAND FOR A JURY TRIAL

Plaintiff demands a trial by jury as to all causes of action triable to a jury.

Dated: June 18, 2026                    **THE DIULIO FIRM PC**


                                        /s/ Kristopher P. Diulio_____
                                        Kristopher P. Diulio


                                        Attorneys for Plaintiff
                                        MARCO SCOTTINI

26

**COMPLAINT**

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.    I, _____Marco Scottini_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.    I have reviewed a Class Action Complaint and authorize the filing of a comparable complaint on my behalf.

3.    I did not purchase or acquire Terran Orbital Corporation common stock at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of all persons and entities other than Defendants that purchased or otherwise acquired Terran Orbital Corporation securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.    The attached sheet lists all of my transactions in Terran Orbital Corporation securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed ___Jun 18, 2026_____          _____
                        (date)                                                (signature)

                                                            Marco Scottini
                                                   _____
                                                                (print)

| Case Name | Terram Orbital Corporation |
|---|---|
| Ticker | LLAP |
| ISIN | US88105P1030 |
| Class Period | |

| Client Name |
|---|
| Marco Scottini |

| Date of transaction | Transaction Type | Quantity | Price per Share | Value |
|---|---|---|---|---|
| 14-08-2024 | P | 12250 | $0.45 | -$5,467.18 |
| 25-06-2024 | P | 7330 | $0.73 | -$5,327.14 |
| 07-05-2024 | P | 400 | $1.04 | -$416.00 |
| 07-05-2024 | P | 366 | $1.04 | -$380.64 |
| 06-05-2024 | P | 100 | $1.05 | -$105.00 |
| 06-05-2024 | P | 3540 | $1.05 | -$3,717.00 |
| 06-05-2024 | P | 449 | $1.05 | -$471.45 |
| 06-05-2024 | P | 300 | $1.05 | -$315.00 |
| 11-01-2024 | P | 375 | $0.92 | -$345.00 |
| 11-01-2024 | P | 200 | 0.92 | -$184.00 |
| 11-01-2024 | P | 200 | $0.92 | -$184.00 |
| 11-01-2024 | P | 300 | $0.92 | -$276.00 |
| 11-01-2024 | P | 2000 | $0.92 | -$1,840.00 |
| 11-01-2024 | P | 1300 | $0.92 | -$1,196.00 |
| 11-01-2024 | P | 200 | $0.92 | -$184.00 |
| 11-01-2024 | P | 200 | $0.92 | -$184.00 |
| 11-12-2023 | P | 1020 | $0.76 | -$775.20 |
| 11-12-2023 | P | 2700 | $0.76 | -$2,052.00 |
| 11-12-2023 | P | 1660 | $0.76 | -$1,261.60 |
| 27-10-2023 | P | 1470 | $0.80 | -$1,176.00 |
| 27-09-2023 | P | 1211 | $0.88 | -$1,065.68 |
| 21-09-2023 | P | 50 | $1.06 | -$53.00 |
| 21-09-2023 | P | 500 | $1.06 | -$530.00 |
| 21-09-2023 | P | 380 | $1.06 | -$402.80 |
| 21-09-2023 | P | 20 | $1.06 | -$21.20 |
| 21-09-2023 | P | 100 | $1.06 | -$106.00 |
| 25-08-2023 | P | 1314 | $1.15 | -$1,508.59 |
| 04-08-2023 | P | 2500 | $1.32 | -$3,300.00 |
| 05-07-2023 | P | 925 | $1.46 | -$1,350.50 |
| 05-07-2023 | P | 6500 | $1.46 | -$9,490.00 |
| 29-06-2023 | P | 1427 | $1.40 | -$1,997.80 |
| 26-05-2023 | P | 445 | $1.19 | -$529.55 |
| 19-05-2023 | P | 698 | $1.55 | -$1,080.40 |
| 29-03-2023 | P | 1108 | $1.56 | -$1,728.48 |
| 20-03-2023 | P | 1230 | $1.74 | -$2,134.05 |
| 15-03-2023 | P | 900 | $2.05 | -$1,844.23 |
| 08-03-2023 | P | 590 | $2.24 | -$1,321.60 |
| 02-03-2023 | P | 300 | $2.34 | -$700.50 |
| 01-03-2023 | P | 864 | $2.65 | -$2,289.60 |
| 27-02-2023 | P | 206 | $2.67 | -$550.02 |
| 27-02-2023 | P | 200 | $2.67 | -$534.00 |
| 27-02-2023 | P | 100 | $2.67 | -$267.00 |
| 27-02-2023 | P | 16 | $2.67 | -$42.72 |
| 27-02-2023 | P | 300 | $2.67 | -$801.00 |
| 29-12-2022 | P | 890 | $1.44 | -$1,281.60 |
| 13-12-2022 | P | 351 | $1.51 | -$530.01 |
| 13-12-2022 | P | 100 | $1.51 | -$151.00 |
| 13-12-2022 | P | 100 | $1.51 | -$151.00 |
| 13-12-2022 | P | 49 | $1.51 | -$73.99 |

| 13-12-2022 | P | 25 | $1.51 | -$37.75 |
| 13-12-2022 | P | 100 | $1.51 | -$151.00 |
| 13-12-2022 | P | 75 | $1.51 | -$113.25 |
| 13-12-2022 | P | 100 | $1.51 | -$151.00 |
| 13-12-2022 | P | 10 | $1.51 | -$15.10 |
| 09-12-2022 | P | 755 | $1.79 | -$1,351.45 |
| 06-12-2022 | P | 623 | $2.04 | -$1,270.92 |
| 02-12-2022 | P | 269 | $2.14 | -$575.66 |
| 02-12-2022 | P | 271 | $2.20 | -$596.20 |
| 02-12-2022 | P | 318 | $2.16 | -$686.88 |
| 30-11-2022 | P | 280 | $2.29 | -$641.20 |
| 03-11-2022 | P | 715 | $2.75 | -$1,966.25 |
| 28-10-2022 | P | 85 | $2.62 | -$222.70 |

